Council, are you ready to proceed? Before I begin, I'd like to say I'm hearing impaired, and even though I'm putting my hearing aids up to 11, I would like it if you could yell at me as if I made a mistake across the bridge table. Would facilitate my hearing your comments greatly. We'll do our best to accommodate you, Mr. Pardon me. We'll do our best to accommodate. Thank you. See, I already made a mistake. May it please the court. What I will try to do is first set a background on the tone for patent eligibility. On page 14 of the blue brief. You state. It is believed that the exception to patent ineligibility for the asserted abstract idea. ellipsis would consider contain new. I'm sorry, page 18. Would consider new and original set of playing cards as establishing patent eligibility. What does that mean? Basically, what I will show is that even under. What does that sentence mean? There are exceptions under patent eligibility. When is claim has been found to cover an abstract idea. The exception being whether it's a new and unique card under in Ray Smith or where it contributes a new function by a material component used in the method. You know, you have a quote from Francis Bacon at page 45. Yes, I do. There arises from a bad and inapt formation of words, a wonderful obstruction to the mind. Yes, indeed. That obstruct your mind. That's that. I don't even think that's a sentence in in this. All right. Well, I'll have to write my high school teacher if she's still alive and come in or inability to get used to the English language across. But going back to words, I would like to point out that words have meanings and the words must be understood in context. And the concept of patent eligibility as originally built on one hundred and fifty years of law from Leroy versus Tatum Latham was that. One could not get a claim that would prevent public use of the basic tools of scientific and technological works. I think that let's let's stay away from generalities on page 18 of the Blueberry. You say towards the bottom, the present examination has found that the broadest claims to the method using the recited set of playing cards is novel and unobvious. And then you have in parenthesis de facto by not citing and maintaining any rejection on prior. Where in the record did the present examination find that the broadest claims to the method using the recited set of playing cards is novel and unobvious? The fact that it was not rejected on a thirty five USC one or two, one or three, which is an obligation of the patent office and examining any application, if not the primary responsibility to make sure legal authority for saying that their failure to to state that rejection is a concession to you. I would have to say that is inherent in the prosecution process, that if no rejection is made on the court authority, I cannot do that. But the fact of the matter is, it has not been rejected on thirty five USC one. I'm not yelling at you, by the way. I'm talking. I know. I know. I understand that. One on one is often said to be a preliminary threshold that you have to get through. Yes. You didn't get through it. And I believe that even though I, since you didn't get through one on one, why do you think there was an obligation to do a one on two and a one on three? I will show you in particularity with three patents, two of which I cited in the prosecution, that addressing the issue of one on one in a positive manner and finding patent eligibility allowed the patent office or caused the patent office to fail to examine under thirty five USC one or two, one or three and issued at least three patents that were not elect novelty. And I will get to that point also. But first on the issue of the specificity here, looking at Enright Golden Hour, which had the position that because the printed matter did not impact the function of the surface, the function of the substrate of the die, that it was printed matter that was patent ineligible. The problem with respect to the present application is I'm not concerned about the surface of a specific single playing card. Rather, I'm talking about a random outcome generator. The set of cards, which when used in specific physical steps, produces a random outcome. The matter, the printed matter identified in the claims accepted by the examiner as being sufficient under thirty five USC one twelve to identify what that matter was, enables a function of that random event generator. The set of playing cards to solve a longstanding need in the art to create a rapid, easily determined, high bonus event in playing card games. And the math is in the case, in traditional deck of playing cards, the only maximum event you could get would be for three specific cards in a sequence of the same suit. And that was limited to about thirteen thousand to one. Are your claims limited to that embodiment? Pardon me? Are your claims limited to that embodiment? I think they're not, but I'm just asking. My claims are absolutely limited to at least three cards in two sets of suits, not just one. If you did it in one suit, there'd be no impact on the functionality of the probability of events coming out. It had to be multiple decks. And by having three consecutive cards or four consecutive cards exactly, we cited in the claims, in the play of blackjack or Baccarat, where there are only three up cards or four up cards present, the determination of that side bet, and it's only the side bet that's determined by that outcome, is increased by a factor of five hundred percent. In any other field of technology, if I introduced a limitation to a claim that increased the function of the underlying article, the random event generators, the multiple set of cards, by five hundred percent, I'd be receiving accolades, not a rejection. When you filed this application, were you anticipating a 101 fight? Absolutely. I wrote the case and designed the case to address that issue based on the alteration and the functionality of the article being used, the random event generator. It's not a single card that- Do you see this as some kind of a test case on what 101 is? Yes, absolutely. I have no plans or interest to commercialize this case, but what is critical is to get a ruling that when the random event generators, the playing cards, have indicia on them, which in their function within the description of the steps in the claims, significantly alter the function and outcome of events, that should be patently eligible. You started your presentation, I thought, on an interesting note in which you said words have meaning. Do you think that all the words that have been published in all the opinions since Alice, all the words in all those opinions have meaning? They have meaning even if, in my humble opinion, they've been somewhat overbearingly applied to such a simple event as a playing card game or an electronic gaming event. They have meaning. Those words have meaning. They have good intentions. But those are good intentions. I firmly believe that in the recitation of these claims, that the recitation of a non-standard set of playing cards comprising at least two sets of 52 cards, wherein exactly three or four playing cards are exposed, and at least three cards consisting of the two random physically cards have been provided with a bonus indicator distinct from standard rank and suit on standard playing cards in addition to rank and suit on the cards, is a concept physically embodied in the claims having a function in the claims and not merely some concept in which it alters the performance of the event in real life. I was very specific in limiting it to exactly three cards, exactly four cards, and the fact that at least two of the cards had to have these special bonus benefit markers on them. If you were to win this case, where would you go next? I'm probably going to retire in a short while. I'm 75. I've issued over 1,000 U.S. patents that I solely wrote and solely prosecuted, and then annoy my daughter, who's a professor of constitutional law, and let her know that I did something. What I would do with this— I'm sure she'd be proud of you. Pardon? I'm sure she'd be proud of you. Unlikely. But additionally, I would like to point out that I'm involved in mentoring students at the University of Nevada and their gaming entrepreneurship program, and with some of the patents that I previously issued, I've been able to pay their way through college based on these gaming contents. Is that UNR or UNLV? UNLV. Sorry. But the issue is this should be patentable if the function of the article used in the method is so dramatically impacting on the outcome of the use of that material in a specific environment. If you lose this case, wouldn't you also have made a wonderful clarification that that's not true? I am planning to write a journal article with a bit more pejorative in it than my presentation has been here today, but I'm hoping I will not have to do that. And I think I'm reserving the rest of my time for response. Okay. Counsel, are you prepared to contribute to the making of new law? If that's what's required of me, I'd be delighted. I'd like to know what the government thinks its odds are. In the marked cards or the non-marked cards? I think ultimately, though, Your Honor, this case is easily decided under Golden R. I think that both the beginning and the end of Golden R summarize the law that claims directed to the abstract idea for rules for playing a game where the only arguable and inventive concept relates to markings constitute prudented matter, and it's not patent eligible. And so I don't know about all the case laws in STEM, but this case is so on point, I don't know that I have much more to say. If there are any questions, I'm happy to answer them, but if not, I'm happy to sit down. Thank you, Counsel. That was one of the best arguments we've ever had. Are you reserving the rest of your time? Let's look at In re Golden R. What that case relied on was the fact that there was a single die or multiple die with specific markings on them which altered the function of that die and the numbers produced. That case should have never gotten up there because that subject matter was not even novel based on a game called Marrakesh published in 2007. Again, what is happening is the cases are directed towards patent eligibility and they miss the point of novelty and non-novelty. But more importantly, Golden R says that because the numbers did not affect the function of the substrate, it was not patentable under N. Ray Miller. N. Ray Miller specifically stated that if the printed matter altered the function of the device, not the surface, not a single element, but the device, my random outcome generator of the multiple sets of playing cards, the function has been altered by orders of magnitude in times. I assert that Golden R, even if correct, does not apply here because I'm not talking about how the function of a single card is implemented by the printed matter on it. Rather, it's a totality of the random outcome generators of the multiple sets based on the unique combination of printing on those cards which changes and alters the outcome function provided by those cards. I mentioned earlier that I tried to relate two patents I mentioned in my brief were on blockchain systems. Both of those cases are generic to blockchains. A 10-minute search hitting on Wikipedia found that the subject matter of both those claims wasn't even novel. U.S. patent 10-417-871 was recently issued after the filing of these briefs on a gaming event using an electronic device having a game processor. That patent was not even novel, but they allowed it, citing Enfish as improving the function of the computer. And it wasn't even novel. There's a 2008 publication. Mr. Littman, wrap it up. There's a 2008 publication which is identical to the function of what that software was doing in the physical game. Because they were focused only on 35 U.S.C. 101, they failed to examine it. Mr. Littman, wrap it up. Your time's up. Thank you very much. Mr. Littman, before you sit down, I have a favor to ask. No quid pro quo, you understand. I, too, spend time in the academic community. And when you publish your article, would you send me a copy? If it's published, I will definitely do it. If it's not published, I will send you a written copy, hand-signed. Mr. Littman, I have something to add, too. And I want you to take this back to all the people in the gaming departments at UNLV if they don't know this already. And that is my favorite cartoon, which has been for many years. It's from the New Yorker in the 1920s. It's by a fellow named Webster. And it shows a gentleman walking into a patent attorney's office back in the old days. And he's holding a box. And the caption underneath says, I worked on it, and I worked on it, and I worked on it, and I couldn't get it to work. But then it occurred to me there might be a market for an automatic card shuffler that doesn't work. I wrote many of the patents for John Breeding, who was the inventor of the first commercial card shuffler for Shufflemaster Gaming, and then Scientific Games and Valley. Every single card shuffler in the market marketed by them, I wrote the patents on. But those work, I assume. So they do.